UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LORENZO ADAMSON,

          Plaintiff,

    v.

CHRISTOPHER O'BRIEN, DANIEL

DUDLEY, and BRIAN STANSBURY,

        Defendants.

Case No.  13-cv-05233-DMR


**FINAL PRETRIAL ORDER**

Following two pretrial conferences held on October 29, 2015 and November 5, 2015, the court sets forth its pretrial rulings below.

## I.      STATEMENT OF THE CASE

The court will use the parties' stipulated Statement of the Case to describe this matter to the jury:

"Plaintiff Lorenzo Adamson and Defendants Sgt. Brian Stansbury and Officers Daniel Dudley and Christopher O'Brien are all San Francisco Police Officers.  Plaintiff alleges that Defendants subjected him to excessive force following a traffic stop.  Plaintiff also alleges that Defendants committed a violent act against him on the basis of his race.  Defendants deny these claims, and allege that they used reasonable force to protect themselves and to take Plaintiff into custody."

The case shall be captioned *Lorenzo Adamson v. Christopher O'Brien, Daniel Dudley, and Brian Stansbury*.  The parties and the court shall refer to Defendants' counsel without making

United States District Court
Northern District of California

reference to the City and County of San Francisco or the San Francisco City Attorney's Office.

## II.      MOTIONS IN LIMINE

**Plaintiff's Motions in Limine Nos. 1 and 2** [Docket No. 96]

Plaintiff moves to exclude previous instances of Plaintiff driving without license plates and previous encounters with uniformed officers.

Except as described below, Defendants may not introduce evidence about Plaintiff's prior traffic stops or encounters with law enforcement because such facts are irrelevant. Therefore, Defendants may not elicit any testimony about Plaintiff's license plates, other than that his vehicle did not have plates on the night in question. Defendants may not elicit testimony about Plaintiff's "attitude" or "interactions" with officers during other encounters.

Defendants may introduce facts about prior traffic stops only to the extent such evidence explores the credibility of Plaintiff's testimony about why he did not identify himself as an officer at an earlier opportunity in the encounter at issue in this case. However, in so doing, Defendants shall not elicit other details about the prior incidents. For example, Defendants may ask "you have been pulled over in traffic stops before. On those occasions, you identified yourself as an armed officer right away, before you exited the car, didn't you?" Defendants may ask follow-up questions about the details regarding Plaintiff's actions and reasons for identifying himself as an officer in a particular encounter, but shall not otherwise elicit detailed descriptions about each such encounter. Defendants shall not make reference to alleged profanities used by Plaintiff in prior stops. Defendants may not make any reference to the Leland incident, as it is dissimilar and therefore irrelevant. The motion is **GRANTED IN PART.**

**Plaintiff's Motion in Limine No. 3** [Docket No. 96]

Plaintiff moves to exclude the portions of the testimony of Defendants' expert witness, Mr. Cameron, which appear to state legal conclusions about ultimate issues in this case. This motion is **GRANTED** as discussed below. The motion is **DENIED AS MOOT** as to testimony regarding probable cause. Mr. Cameron may not testify about the existence of probable cause for the traffic stop, because that issue has been decided and is no longer relevant to the case.

United States District Court
Northern District of California

Neither Mr. Cameron nor Plaintiff's police practices rebuttal expert may testify using any language suggestive of ultimate legal questions. For example, the expert may not testify as to whether the use of force was "reasonable" or "excessive." However, the expert may opine on whether the use of force was or was not acceptable according to the standard practices in the industry. Similarly, the expert may not testify about whether conduct violated any particular law or right, or whether the SFPD policies are lawful or in compliance with the law.

**Plaintiff's Motion in Limine No. 4** [Docket No. 96]

Plaintiff moves to exclude evidence relating to the Internal Affairs investigation into Adamson's truthfulness and credibility. The motion is **GRANTED AS UNOPPOSED**.

**Plaintiff's Motion in Limine No. 5** [Docket No. 96]

Plaintiff moves to exclude memoranda authored by twelve SFPD officers in connection with the Internal Affairs investigation into this incident. Defendants generally do not oppose this motion and represented at the hearing that they do not intend to introduce these memoranda into evidence in their case in chief. Defendants assert that they may attempt to use the documents to refresh recollection pursuant to Rule 803(5). Defendants also assert that if Plaintiff offers testimony about what happened after the use of force, Defendants may attempt to lay a foundation to introduce the memoranda as business records.

Defendants may only attempt to use these documents as represented to the court. The court **RESERVES RULING** on this motion pending Plaintiff's evidence at trial regarding events following the use of force.

**Plaintiff's Motion in Limine No. 6** [Docket No. 96]

Plaintiff moves to exclude the transcripts of Plaintiff's interviews from the Internal Affairs investigation. Defendants intend to use these transcripts for impeachment. As represented to the court, if defense counsel intends to introduce material from these documents as party admissions, defense counsel shall identify the excerpts to the court and Plaintiff's counsel before the jury enters for the day. To the extent Defendants intend to use this material to introduce a prior inconsistent statement, **by no later than November 9, 2015,** they shall file authority supporting that the Internal Affairs Investigation interviews qualify as a prior statement "was given under

3

penalty of perjury at a trial, hearing, or other proceeding or in a deposition" pursuant to Federal

Rule of Evidence 801(d)(1)(A).

Defendants may only attempt to use these documents as represented to the court.  The

court **RESERVES RULING** on this motion pending the evidence at trial.

**Plaintiff's Motion in Limine No. 7** [Docket No. 96]

Withdrawn.

**Defendants' Motion in Limine No. 1** [Docket No. 83]

Defendants move to exclude any reference to the City and County of San Francisco as a

party or paymaster.  Plaintiff's only claim against the City was for municipal liability, and the

court granted summary judgment on that claim in favor of the City.  Plaintiff conceded in his

opposition to this motion that the City is no longer a party.  [Docket No. 115.]  The motion is

**GRANTED**.

**Defendants' Motion in Limine No. 2** [Docket No. 84]

Defendants move to prevent Plaintiff from offering opinion testimony about police

practices regarding conducting traffic stops and the use of force.  The motion is **GRANTED**.

Plaintiff may only reference his training and understanding of police practices to explain his **own**

behavior.  (e.g., "I did X because I was trained to do so in order to de-escalate a situation.")

Plaintiff Adamson may **not** testify about whether his own actions or the actions of the Defendants

were appropriate, reasonable, or within accepted police practices.  (e.g., Plaintiff may **not** testify

that he was trained to apply a carotid hold in a particular way, and that Sgt. Stansbury's

application did not comply with that training; Plaintiff may **not** testify that Officer O'Brien's

initial inquiry into Plaintiff's probation or parole status was improper police procedure.)

**Defendants' Motion in Limine No. 3** [Docket No. 85]

Defendants move to exclude Plaintiff's opinion testimony regarding medical issues and

medical expenses.

The motion is **GRANTED** in part.  Plaintiff may only testify about his subjective

perceptions and what he saw or felt in regard to his own physical condition.  Plaintiff may not

testify or allude to the causation of injuries, diagnosis or prognosis of any medical conditions, or

the interpretation of any medical records (e.g., Plaintiff may testify that after the incident, he had to start sleeping on the floor, had to take more pain medication, etc.  Plaintiff may **not** testify that his back condition "was worsened" by the incident.)

As Plaintiff did not offer argument in opposition, Plaintiff may not testify about what his medical treatment providers told him, or whether medical expenses were reasonable, necessary, or caused by the incident.

**Defendants' Motion in Limine No. 4** [Docket No. 86]

Defendants move to exclude all medical bills and any references to them, including the amounts billed and paid.  Defendants move to exclude the medical bills because Plaintiff did not disclose a medical expert, and Plaintiff cannot competently testify about whether medical expenses were reasonable and necessary, or how to apportion a medical bill as attributable to the incident versus attributable to his preexisting back condition.

The motion is **GRANTED,** except that Plaintiff may use medical bills to refresh his or his treatment providers' recollection about the date and type of treatment received after the incident. *See* discussion below re medical treatment provider witnesses.

**Defendants' Motion in Limine No. 5** [Docket No. 87]

Defendants move to exclude evidence of Plaintiff's lost wages.  The parties agree that the period of potential lost wages is from April to October 2014.

At the pretrial conference, Plaintiff's counsel represented that he sought damages in the form of lost wages during the pendency of the criminal prosecution solely under the Ralph Act.[1] Plaintiff argues that he is entitled to lost wages because the City and County of San Francisco has not instituted criminal proceedings against other officers in similar circumstances.  To begin with, the City and County of San Francisco is no longer a defendant.  Moreover, Plaintiff's offer of proof describes only his own deposition testimony regarding the incident; he does not submit any evidence about whether other officers have been criminally prosecuted following complaints or lawsuits challenging police behavior.  Plaintiff's argument that the criminal prosecution would not

---

[1] The court will not consider Plaintiff's subsequent written effort to recant that representation, but notes that the result would not be different for the Section 1983 or Bane Act claim.

United States District Court
Northern District of California

have gone forward but for Defendants' "misrepresentations and omissions" is purely speculative. Plaintiff has not submitted any authority or evidence supporting causation and his entitlement to lost wages for this period of time.  Therefore, Plaintiff may not seek damages in the form of lost wages during the pendency of his criminal prosecution.

Plaintiff also may not seek an award of damages for emotional distress related to the criminal prosecution.  To the extent Plaintiff bases his claim for emotional distress damages on a malicious prosecution theory, Plaintiff has not stated a claim for malicious prosecution against the Defendants.  Moreover, Plaintiff has failed to present evidence sufficient to rebut the presumption of independent judgment exercised by the San Francisco District Attorney in prosecuting charges against Plaintiff.  The only evidence Plaintiff submitted was his own deposition testimony.  *See Newman v. Cty. of Orange*, 457 F.3d 991, 995 (9th Cir. 2006) (in order "[t]o rebut the presumption . . . and to survive summary judgment on a malicious prosecution claim, a plaintiff must provide more than an account of the incident in question that conflicts with the account of the officers involved.").  Plaintiff also fails to present argument or evidence that Defendants acted "maliciously or with reckless disregard" of his rights, see *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991), and offers no authority to support his entitlement to emotional distress damages in these circumstances.  The motion is **GRANTED.**  Plaintiff may not seek emotional distress damages stemming from the criminal prosecution.

**Defendants' Motion in Limine No. 6** [Docket No. 88]

Defendants move to exclude daily observation reports, as well as evidence of complaints, claims, rumors or allegations unrelated to the incident.  The motion is **GRANTED AS UNOPPOSED**.

**Defendants' Motion in Limine No. 7** [Docket No. 89]

Defendants move to exclude evidence regarding the details and results of the criminal prosecution.

The motion is **GRANTED.** Evidence that the jury acquitted Plaintiff on the charge of violence against an officer, and failed to reach a verdict on the charge of resisting arrest cannot be used by Plaintiff to show that he did not resist arrest or did not act violently toward the

Defendants.  The failure of prosecutors to establish beyond a reasonable doubt that Plaintiff acted violently toward Defendants or that he resisted arrest does not preclude Defendants from attempting to establish these facts as a defense in this civil action.

To the extent that parties attempt to use the testimony from the criminal proceedings for impeachment, or as party admissions or prior inconsistent statements, the parties agreed that the testimony should be generically described (e.g., "you testified under oath on [date]") to prevent any negative inferences that might be associated with the existence of the criminal prosecution.  If a party seeks to use testimony that implicates the existence of the criminal proceedings, such testimony must first be cleared with the court.

### III.    DISPUTED JURY INSTRUCTIONS

The court discussed its rulings on disputed jury instructions at the October 29, 2015 pretrial hearing.  The court intends to issue proposed final jury instructions early next week, and will discuss them, along with the verdict form, during a final charging conference late next week at a time to be announced. The parties shall come prepared to argue the relationship between the excessive force, Bane Act and Ralph Act claims at that time.

### IV.    TRIAL WITNESSES

Defendants object to a number of Plaintiff's proposed witnesses based on his failure to properly disclose them.[2]  Other than a placeholder for a "Kaiser treating physician," Plaintiff did not disclose any of the disputed witnesses in his initial disclosures.  Plaintiff did not supplement his initial disclosures, nor did he name any of the disputed witnesses in expert disclosures.

The parties filed their witness lists as part of their joint pretrial conference statement on October 9, 2015.  [Docket No. 77.]  On October 16, 2015, Defendants filed objections to Plaintiff's witness list.  [Docket No. 104.]  Defendants specifically objected to sixteen of Plaintiff's proposed witnesses, based in part on the failure to make proper and timely disclosures.

---

[2]    Fact discovery closed on June 27, 2015. [Docket No. 39.]  The deadline for expert disclosure was September 24, 2015.  The deadline for supplemental expert disclosure was October 8, 2015.  Expert discovery closed on October 22, 2015.  [Docket No. 70.]

United States District Court
Northern District of California

1   Additionally, Defendants objected to medical treatment providers on the basis that Plaintiff had

2   not properly disclosed them as experts.  On October 27, 2015, long after the deadline for pretrial

3   submissions, Plaintiff submitted two amended witness lists that added nine witnesses, six of whom

4   are medical treatment providers.  [Docket Nos. 128 and 129.]

5          Under Federal Rule of Civil Procedure 26(a), a party's initial disclosures must identify

6   witnesses who are "likely to have discoverable information ... that the disclosing party may use to

7   support its claims or defenses."  A party has an affirmative obligation to supplement the initial

8   disclosures "in a timely manner" if they become incomplete or incorrect.  Fed. R. Civ. Pro.

9   26(e)(1)(A).  Supplementation, however, is not mandatory "if the additional or corrective

10  information has [ ] been made known to the other parties during the discovery process or in

11  writing." *Id.*

12         Rule 37(c)(1) permits the Court to preclude the use at trial of any information required to

13  be disclosed by Rule 26(a) that is not properly disclosed.  Failure to disclose may be excused if the

14  party can demonstrate substantial justification or if the nondisclosure is harmless.  *Id.*

15         Defendants' objections are **OVERRULED** as to **Clifford Mayes** and **Clarence Williams.**

16  Both were identified as witnesses in the incident report, and Clarence Williams testified in the

17  criminal proceeding.

18         Plaintiff also proposes to call Mrs. Adamson as a trial witness solely for the purpose of

19  testifying about her percipient knowledge about Plaintiff's injuries.  Plaintiff has not explained

20  why he did not disclose Mrs. Adamson until his pretrial submission, since he has been aware all

21  along that she had discoverable information supporting his claim.  [Docket No. 145.]  Plaintiff

22  argues that he did not need to disclose Mrs. Adamson because Defendants were made aware of her

23  through Plaintiff's deposition testimony.   The deposition excerpts submitted by Plaintiff are

24  meager.  One excerpt indicates that she kept track of household records, which is not relevant.

25  The other excerpt indicates that she knew he slept on the floor "a few times."  [Docket No. 145-1.]

26  This is insufficient to put Defendants on notice that she might have discoverable information of

27  any significance about his injuries.  Plaintiff's failure to timely disclose her is not substantially

28  justified, and is not harmless, for Defendants assert that had they been put on notice, they would

have sought her deposition.  The court **SUSTAINS** Defendants' objections as to **Mrs. Adamson**.

Plaintiff has represented that **D'Paris Williams, Jami Tillotson,** and **Orlando Rodreiguez** will only be offered for impeachment purposes, and thus were not required to be disclosed.  It is unclear whether these individuals can present proper impeachment, as they do not appear related to the incident in any way.  The court **RESERVES RULING** on Defendants' objections.  If Plaintiff intends to call any of these witnesses for impeachment, he must make a proffer to the court before the jury enters for the day.

Finally, Defendants object to Plaintiff's ability to call **medical treatment providers**. According to Defendants, Plaintiff's initial disclosure only identified "medical treatment providers at Kaiser Hospital," Plaintiff did not serve any supplemental disclosures, and Plaintiff did not disclose any medical expert witnesses.  Plaintiff does not dispute these assertions.

Other than the "Kaiser medical treatment providers" identified in Plaintiff's initial disclosures, Plaintiff did not disclose any other treatment providers as potential witnesses until he named nine of them in his October 9, 2015 pretrial submission.  For one of these nine providers, instead of listing a name, Plaintiff gave a description ("physical therapist who treated Plaintiff for injury to his back"), and an address.  [Docket No. 77 at 11.]  On October 27, 2015, Plaintiff added six treatment providers through two "amended witness lists," which were filed eighteen days after the pretrial witness disclosure deadline, and five days after the close of expert discovery.  [Docket Nos. 128 and 129.]  Two of the treatment providers, William Quibell and Thomas Kesinger, appear to fit the description of the previously unnamed physical therapist appearing on Plaintiff's October 9, 2015 pretrial witness list.  However, that list only referred to one (rather than two) physical therapists.

Plaintiff's witness summaries are sparse and generic.  For ten medical treatment providers, (Thomas R. Johnson, Dr. Brad Moy, Dr. Manuel M. Dizon, Dr. Brian Sakamoto, William Quibell, Thomas Kesinger, Dr. John D. Warbritton III, Ricki P. Nolley, Jr., Dr. Joseph M. Grant, and Dr. Samuel Graves), Plaintiff merely states that the provider treated and/or diagnosed Plaintiff for injury to his back.  Plaintiff had a preexisting back injury and was on disability leave prior to the subject incident.  His witness list fails to specify whether any of these medical treatment providers

United States District Court
Northern District of California

1    treated or diagnosed him for his preexisting back injury or had information about his post-incident

2    condition.  Two medical treatment providers, Dr. Dioskon Rena and Dr. Varsh R. Sikka, are

3    identified as having treated and/or diagnosed Plaintiff for his pre-existing back injury and injuries

4    suffered due to the subject incident.  One treatment provider, Dr. Charles Sonu, is identified as

5    having treated and/or diagnosed Plaintiff only for his pre-existing back injury.

6          Of the approximately fourteen medical treatment providers listed in Plaintiff's pretrial

7    witness lists, only **Peter Wilhelm Emblad** appears to be a treatment provider at Kaiser Hospital,

8    which fits the description in Plaintiff's initial disclosure.  Dr. Emblad appears to have treated

9    Plaintiff at the emergency room following the subject incident.  [Docket Nos. 77, 128 and 129]

10         With respect to medical treatment providers, the court rules as follows.  Plaintiff did not

11   disclosure any medical expert under Fed. R. Civ. P. 26 (a)(2)(A), and did not  provide written

12   reports under Fed. R. Civ. P. 26(a)(2)(B) or summary reports as required for non-specially

13   retained experts under Fed. R. Civ. P. 26(a)(2)(C).  For this reason, Defendants' objection is

14   **SUSTAINED** in part.  None of Plaintiff's medical provider witnesses may offer expert opinion

15   testimony because none were properly disclosed as experts.  However, Plaintiff's initial

16   disclosures put Defendants on notice that a Kaiser treatment provider had discoverable

17   information that supported Plaintiff's claim.  Plaintiff may therefore call Dr. Emblad, the Kaiser

18   provider who treated Plaintiff directly following the incident.  For the reasons stated above, Dr.

19   Emblad may only provide percipient testimony and may not provide medical opinion testimony

20   because he was not properly disclosed as an expert.  Defendants' objection is **OVERRULED** in

21   part regarding **Dr. Emblad**.

22         As to other medical treatment providers, Defendant's objection is **SUSTAINED** in part.

23   Plaintiff did not properly disclose them.  The fact that Defendants subpoenaed medical records did

24   not adequately put Defendants on notice that Plaintiff was planning to call any particular provider.

25   Plaintiff argues that he should nevertheless be permitted to offer the testimony of all medical

26   treatment providers as percipient, non-expert witnesses.  Plaintiff asserts that they can provide

27   limited testimony to verify that they saw the Plaintiff on a specific date, and ran specific tests or

28   provided particular treatment.  Plaintiff represents that the medical treatment providers would not

give any testimony beyond these bare facts, such as testimony about the causation of injuries, prognosis or diagnosis of medical conditions.  But this kind of limited testimony would be cumulative of the testimony that Plaintiff himself could provide about the dates and type of treatment he received.  However, as discussed at the pretrial hearings, the court allowed Plaintiff to select one medical provider (**Mr. Thomas Kesinger**) to give limited percipient, non-opinion testimony described above.  Defendants' objections to medical treatment provider witnesses are otherwise **SUSTAINED**.

## V.      EXHIBITS

The parties will remove the "Confidential" watermark added to the exhibits for the purposes of the litigation.

The following summarizes the rulings made by the court at the November 5, 2015 pretrial hearing.

### A.  Defendants' Objections to Plaintiff's Proposed Exhibits

#### 1.  <u>Exhibit 1</u>

Plaintiff will substitute copies of Exhibit 1 without the asterisk markings.

#### 2.  <u>Exhibit 3</u>

Defendants' objection is **SUSTAINED**.

#### 3.  <u>Exhibits 6, 7, 8, 9</u>

Plaintiff may use these exhibits solely for impeachment or to refresh recollection.

#### 4.  <u>Exhibit 10</u>

Defendants' objection is **SUSTAINED.**  The parties shall use Defendants' Exhibit F, which is a complete version of this document.

#### 5.  <u>Exhibits 11-15</u>

Defendants' objections are **SUSTAINED.**

#### 6.  <u>Exhibit 16</u>

Plaintiff may use this exhibit solely for impeachment or to refresh recollection.

United States District Court
Northern District of California

1

**7.  Exhibits 17-25**

Defendants' objections are **SUSTAINED.**  Plaintiff may use these medical records to refresh recollection.

**8.  Exhibits 26 and 27**

Defendants' objections are **OVERRULED.**  *See also* discussion above re Defendants' MIL No. 2 for limitations on Plaintiff's testimony regarding his training or understanding of policies.

**9.  Exhibits 28, 29, 30**

Defendants' objections are **SUSTAINED**.

**10. Exhibit 31**

Defendants' objection is **OVERRULED.**  Its use may be subject to a limiting instruction that Defendants were lawfully permitted to make the traffic stop itself.

**11. Exhibit 33**

Defendants' objection is **SUSTAINED**.

**12. Exhibits 37 and 38**

Defendants' objections are **SUSTAINED**.

**13. Exhibit 39**

Plaintiff represents that Exhibit 39 would only be used for rebuttal.  The court **RESERVES RULING** on this exhibit, pending the evidence at trial.

**14. Exhibits 42-47 and 49-51**

Plaintiff represents that he does not intend to introduce these exhibits into evidence.

**15. Exhibits 48 and 49**

Plaintiff represents that he only intends to use these exhibits for impeachment.

**16. Exhibit 52**

Defendants' objection is **SUSTAINED.**

**17. Exhibit 53**

Defendants' objection is **SUSTAINED**.

United States District Court
Northern District of California

**18. Exhibit 54**

The parties shall meet and confer about the file format for this video exhibit.  Any dispute shall be raised with the court on November 9, 2015 at 8:30 a.m.

**B.  Plaintiff's Objections to Defendants' Exhibits**

**1.  Exhibit F**

Objection withdrawn.

**2.  Exhibit K**

Plaintiff's objection is **SUSTAINED**.

**3.  Exhibit L**

Plaintiff's objection to Exhibit L is **SUSTAINED**.  This exhibit is irrelevant, as Plaintiff cannot claim lost wages.

**4.  Exhibits M, N, and P**

Defendants represent that they only intend to use these exhibits for impeachment.

**5.  Exhibit R**

Defendants represent that they only intend to use this exhibit to refresh recollection.

**6.  Exhibits S, T, U, V, W, X, and Y**

Defendants represent that they only intend to use these exhibits for rehabilitation or to refresh recollection, or for impeachment.  Use of these exhibits is subject to the court's ruling that references to prior testimony must not include references to the criminal prosecution.

**7.  Exhibit DD**

The parties have represented that they will not attempt to introduce their expert reports into evidence.  *See* discussion above re Plaintiff's MIL No. 3.

**VI.     STATEMENT RE ESTABLISHED FACTS**

The parties submitted competing statements regarding the traffic stop and the instructions to Plaintiff to exit the car and sit on the curb.  The parties agreed that the statement should be read to the jury as part of the final jury instructions.

The court will make the following statement as part of the final jury instructions:

1       "The officers were legally permitted to make the traffic stop, instruct Adamson to exit the

2 car, and instruct him to sit on the curb.  The legality of the traffic stop and those instructions are

3 not before the jury.  However, you may consider all of the circumstances regarding the traffic stop,

4 the instruction to exit the car, and the instruction to sit on the curb, in deciding whether any

5 Defendant used excessive force, or whether any Defendant committed an act of violence against

6 Plaintiff on the basis of his race."

7       **IT IS SO ORDERED.**

8 Dated: November 6, 2015

9         _____

10                        Donna M. Ryu

11               United States Magistrate Judge

United States District Court
Northern District of California